Morning, your honors. May it please the court. I'm Mark Ebert and I represent the appellant, Ms. Jackie Leigh. I'm going to start, and given time constraints, I'll probably spend most of my time addressing the rules set out in the three cases that the court asked us to address. Jackson, Evans, Martinez, and Whipp, and how they do, and in some cases, do not apply to this case. Those cases raise three issues. The first is that the departure for substantial assistance does go down from either the pre-departure guidelines or the mandatory minimum, whichever is higher. But there was a mandatory minimum here, correct? Yes, there was. So we're going down first from the mandatory minimum, isn't that right? No, sir. Why not? Because no matter how you look at it. I shouldn't say first, but there's two parallel tracks, correct? But the reason you don't is because no matter how you calculate the guidelines, whether it's the original guidelines in the probation report, whether it's the guidelines that the court ultimately decided applied for, even if you agree with me, the guidelines without that ICE enhancement, all three of those levels are above the mandatory minimum. Well, you first have to know what the new mandatory minimum is, don't you? The mandatory minimum is always 120. But the government moved for a reduction for substantial assistance, correct? Right. And that, under 5K1, whatever the criteria are, there's a set of criteria, the nature of the assistance, the extent of it, the assessment of what it accomplished. And then the judge is supposed to – the government is supposed to make a recommendation, and then the government – the court is – then you arrive at a new – take it down and you arrive at a new mandatory minimum. Isn't that right? No, Your Honor. The way I understand this process is first you determine what the guideline range is. And if the guideline range is still above the mandatory minimum, then you apply the substantial assistance departure. Okay? And that's very important because, again, whether or not you agree with me on the ICE issue, that is what starts. That is the baseline from which you do the substantial assistance departure. All three of the cases that the court directed us to address, Jackson, Evans, Martinez, and Witt, all three of those were cases where the guideline range was below the mandatory minimum. So in this case, because all of those cases deal with a different situation, guideline range is below the mandatory minimum, and this is the opposite, many of the things, not all, but most of the things that those three cases say do not apply to this case. Because here it's a guideline-based sentence, and it's the departure. First you determine the guidelines, then the departure is what breaks the mandatory minimum. That's all. I'm sorry, but I just don't understand how you're reading Jackson and the other related cases. You know, I know things have changed since I was a district judge, but always whenever there was a mandatory minimum, we had to get off the mandatory minimum. Right. Right? Right. And you could do it in two ways. One, substantial assistance or the safety valve applied. Right. The safety valve doesn't come into work, doesn't kick in here, so it's substantial assistance. Right. That gets us off the mandatory minimum. Correct. But what I'm saying is that when the guidelines are higher than the mandatory minimum, the guidelines are still relevant because that's what you use to go down on the substantial assistance departure. If the mandatory minimum were higher, you're correct, that's the new guideline sentence, and then you go down from there. Okay. It may or may not be true. It depends on how you view the interaction of the statute and the guidelines. Assuming for the sake of argument that you calculate the new mandatory minimum first, how does that affect your argument? I realize you disagree with that. The mandatory minimum is the same regardless because if the guideline range is higher than the mandatory minimum, which it is here no matter how you calculate it, if your honors agree with me or not on the ICE issue, then the sentence would be above the mandatory minimum. It would be a guideline sentence, assuming the 3553A factors don't change the guidelines. Okay? So you have to do the guidelines first and determine whether it's procedurally correct, and then you get to. . . What case says that? All the cases that the three cases that the court. . . Well, I was on Jackson, and that's not quite the way we read it. Because Jackson says that the reason you start from the mandatory minimum is because it's a mandatory minimum-based sentence. Right, but I guess what I'm saying is. . . Because the guidelines in that case were below the mandatory minimum. . . Right. The mandatory minimum becomes the new guideline. I understand that. What I'm saying is there a case that stands for the proposition you're urging today. . . I can't. . . That when, under these circumstances, you do the guidelines calculation first. You have to do the guideline calculations no matter how you. . . You do, but once you arrive at the mandatory minimum, at least the way I understand the case law, the case that Judge Thomas is talking about, once you have used your. . . The court has exercised its determination under 5K1.1 and made the reductions for a substantial assistance, get a new mandatory minimum. Right. Okay, then you go over and look at the guideline range. Look at the guideline range. If that guideline range is above the mandatory minimum, you can apply the. . . You can enter that guideline range. You can apply the 3553A factors and other departure criteria. If you can, you can bring it all the way down to the new mandatory minimum, or it could be that you don't come down that far and it's a little bit above. You can never go below the new mandatory minimum. Right. In this case, all of the guideline calculations, no matter how you decide them, whether you agree with me or not, they all end up below the mandatory minimum, right, because the substantial assistance departure, even if the court did it, brings you below the mandatory minimum. I'm sorry. You're looking. . . I'm not following the way you're reading the cases. But let me ask you this. Let's just assume that we have to look at. . . At some point, we have to look at the guidelines. And your argument there is that the use of the term ICE in the plea agreement was ambiguous. Right. Right? And it wasn't meant to apply the meaning under the guidelines. It was used more in the street sense of the word, meaning meth. As far as you can tell from the statute, the charging statute, the penalty statute, the indictment, the plea agreement, they all either don't refer to purity at all, or in the indictment and plea agreement, they're used as a synonym for methamphetamine hydrochloride. In other words, they all say methamphetamine hydrochloride, parentheses ICE, as a synonym. And we know that the defendants here and the probation office and the agents and everybody else used that term in, as you said, the usual street sense. And, you know, even if she had pled to ICE of a purity of over 80 percent, which I say of course she did not, the court is still required to look at the actual evidence where it's disputed. And it's not allowed to simply accept the agreements of the parties where they're not true, where they're not factually true. And it's the government that has the burden of proving that. And here, the only evidence that they presented was three tests, one of which was 33 percent pure, another of which was 58 percent pure, and the third was below 80 percent. They didn't say where. So under these circumstances, where they have the burden of proof, where they were the drafters of the plea agreements and the indictment, and where nothing in terms of the statutes or the plea agreement specifies otherwise, you know, I just think it's error to calculate the guidelines based on something that wasn't true and that was not supported by defendants. Let me go back, though, and address what I think may be. You only have one minute. Do you want to save it for a second and address it when you hear the rest of the government? Good morning, Your Honor. Karen Johnson for the District of Blanc, the United States. May it please the Court, I believe that there are two things I'd like to address. The defense brought up the sentencing and we challenged the plea agreement and the understanding of it. The plea agreement specifically provides at almost every page that the sentencing guidelines apply to this offense. We say it over and over and over, particularly on page 5, paragraph 7. The sentencing guidelines apply. The sentence will be based on the applicable guidelines level. The guidelines provide in 2PD1.1, note C, that ice is 80% or more purity of methamphetamine hydrochloride. If the defense wants to test that that was not their understanding, our answer is to withdraw your guilty plea and go to trial. Of course, the defense did not want to do that because we had a wealth of evidence that, in fact, these people were dealing in methamphetamine of almost 100% purity, between 97% and 99% purity. I think that has to be the answer if someone wants to challenge the plea agreement after they have entered it and are facing sentencing. It is somewhat ambiguous in the terms of the plea agreement, correct? Ice is not specifically defined in the plea agreement, is it? Ice is defined through the sentencing guidelines. No, but my question was, is it defined in the plea agreement? No. We put methamphetamine hydrochloride, parenthesis, ice, and then reference the guidelines. Okay. Right there, right next to that? If I look at the plea agreement, is that what it's going to show me? Well, first of all, you'll start in the maximum sentence, and that starts on the first page, which provides that the maximum sentence for the amount of ice that she's pleading guilty to is, in fact, I'm sorry. That's just the language from the indictment, if I remember correctly. We have in the indictment, we have 3,000 grams of methamphetamine. Of 80% purity? No, ice. And throughout the plea agreement, we reference ice and then the sentencing guidelines together. Well, true, but, I mean, are you just assuming that it's 100% purity if you say ice? No. Ice, by definition of the guidelines, is 80% or more purity. And that's 2D1.1, note C. Where in the plea agreement, you start at page 1, where does it say ice is defined in the guidelines? Well, it does not. It says paragraph 5, we define the maximum sentence, which you can only get there if, in fact, it is of 80% or more purity or methamphetamine actual. Starting at page 5, paragraph 7, we provide the defendant agrees to sentencing guidelines applied to this offense. Paragraph 7, that she understands the facts she's stipulated to will be used in calculating the guidelines level and stipulates the following facts. And then she provides that they were dealing with over 3 kilograms of methamphetamine, hydrochloride, chlorine, and ice. Okay. You just referenced paragraphs 5, 5A and 5B, correct? Yeah, that's the maximum sentence. That's all it says. It's the maximum possible sentence of 10 years. And that doesn't make any difference whether it's 80% ice or 60% meth. It makes a huge difference. As I note in my memorandum, in my brief, you could have... For purposes of the mandatory minimum I'm talking about. For purposes of the mandatory minimum. Assume you have 3,000 grams of really junk stuff. That's 1% purity. You, in fact, are looking at 30 grams of actual methamphetamine because ice would not apply because the purity is so low. You are out of the mandatory 10 and you're into a mandatory 5 because it's between 5 and 50 grams of actual methamphetamine. So that makes a difference. The purity sets the maximum sentence. And if there's any question about paragraph 5, paragraph 7 specifically says that the guidelines apply. Well, what does it mean to say a defendant agrees that the sentencing guidelines apply to this offense? Are there any offenses that they don't apply to? No. Well, sure. If you get lesser offenses, misdemeanors, of course, it would not. Well, that doesn't really help much in this case. It is a recitation that the statute and the guidelines are the parameters in which this plea agreement was drafted and entered into. That those are the parameters that the parties are bound by. For example, if, in fact, the amount dealt in this case was 60% purity or less, we would have to say so. It would affect the maximum sentence. But if they were between 50 and 80, you wouldn't have to. Well, it has to be over 80% purity. You just said if it were below 50, you'd have to say something else. And so if it were between 50 and 80, you wouldn't have to say it. Well, we would say methamphetamine hydrochloride. We would not say ice. Ice, by definition under the guidelines, is 80% purity or more. What about under the statute? The statute deals in methamphetamine acetyl or methamphetamine hydrochloride. I'm trying to remember. I don't think the statute says ice. It talks about methamphetamine acetyl. Correct. Right. Or... So don't... It wouldn't make any difference for purposes of the statute, correct, that the mandatory minimum is 10 years? I guess that's what I understood. Maybe I'm wrong, but... Well, it could. Again, if you have such a terrible purity that the acetyl methamphetamine is, in fact, a few grams, then it would make a difference on the maximum sentence. I'm not talking about a maximum sentence. I'm talking about the mandatory minimum. Pardon me. I'm talking about the mandatory minimum, too. I'm sorry, Your Honor. But the way this... As I understand the way the statute is written, it doesn't... It's not in terms of purity. Oh, it's in terms of acetyl methamphetamine. Right. Yes. And so to calculate what the acetyl methamphetamine is so naturally, you would have to have the purity. The acetyl methamphetamine of 3,000 grams of 1% purity is 30 grams of acetyl methamphetamine. And if that had been the case, this plea agreement would have been very different. Of course, a plea agreement is made in the context of the discovery that the defendant has access to, of course, as well as the government and the laboratory reports for the entire case that they are looking at. And it comes down, I think, basically to if the defense wanted to dispute what exactly they had pled guilty to, the government... I know that there's a dispute. The... As I understand the case, it says what the defendant thought it meant. It's like a contract. The defendant, at sentencing, disputed that, in fact, she had pled guilty to methamphetamine hydrochloride of 80% or more purity. And that, in fact, is what she was charged with in the indictment. And the government is entitled to go to trial on that issue. And she'd be able to withdraw her guilty plea at that point if she had not understood what the terms were and go to trial. Because that was the charge that issued from the grand jury. And that was the evidence of the case. The difficulty, in a sense, is that you didn't put in the plea agreement what you said here, which is that it's a purity of above 80%. And I understand your argument that it necessarily has to be that if you reference the guidelines, but that is not... It doesn't necessarily communicate that to the defendant. Because ice can be used on the street term in a lot of different ways. It's not consistent with the guidelines. But that is why we reference the guidelines as a parameter... Right, but I mean the... No, no, you're right, Your Honor. We could have said, in case we were dealing with someone who, for example, is not represented by counsel, that we'd have to take this in more detail. We're dealing here with an experienced defense counsel who certainly understands the guidelines and the statute. And the plea agreement is drafted in those terms. We reference the guidelines to make it clear that when we talk about ice, we're talking about 80% purity. Could we say that is 80% or more purity referenced 2D1.1 Section C? Yes, we could have done that. We did not believe that it was necessary. We thought the plea agreement was clear enough. And, indeed, we think that is clear enough. The guidelines are the parameter of the statute. So, in other words, let me ask you this. So the only way, then, when you... Why in the complaint don't you have to allege, then, that it was more than 80% purity for purposes of notice? For purposes of notice, I'm sorry? Well, so you were seeking the mandatory minimum. Yes. Correct? Yes. 120 months, we believe, applied. Right. Now, but you're telling us that the way we need to read that is the mandatory minimum only applies if it's actual. No. The mandatory minimum would apply if it's actual or if it's methamphetamine hydrochloride. Actually, yes. That's not what I'm trying to get at. Well, I'm sorry. I don't have my statute book with me. I have a limited amount of things to pack. My recollection of the statute is that it's either actual methamphetamine or methamphetamine hydrochloride, of more than that particular quantity, more than 50 grams. Okay. So if I check the statute, that's what I should look for? Yes, Your Honor. And then 480-41-1, Section B. Do you think that the district judge complied with Jackson in this case? Yes, Your Honor. I believe that our reading of the guidelines is correct. I looked at some of the decisions from the other circuits. I think that 3553E allows that the only departure below the mandatory minimum has to be for substantial assistance. Some of the cases reference that the court can go down and can use the 3553A factors to decide if it wants to depart as far as the contemplated departure for substantial assistance. But the guidelines in this case do not apply. It has to be the mandatory minimum if you're going to do a substantial assistance departure. And what counsel seems to be saying is that we should send this back to the sentencing court and she should start, she should break the mandatory guidelines, break the mandatory minimum to give a substantial assistance departure, say, for example, to 96 months, and then put in the 3553A factors. And if I understand the statute and the case law, the court does not have the jurisdiction to do that. The only departure for the mandatory minimum can solely be for substantial assistance. So when I read this transcript of the sentencing hearing, it looked, a couple things caught my eye. One, it looked like when the judge made the determination to go down from the mandatory minimum, it was ten levels I think it was initially. Initially. It was based upon an amalgamation of various items, not only those listed in 5K1.1, the criteria, but also her age, the fact that she had had a prior conviction, and seemed to put everything together in deciding how far down from the mandatory minimum to go. Now, that seems to be inconsistent with the district court's obligation to step down from the mandatory minimum based solely on the factors that relate to substantial assistance, the nature and extent of assistance, the quality of assistance, what was accomplished. Of course, the reason for the substantial assistance departure was filed under seal, which of course the court had access to. My recollection, my understanding, of course, of review of the transcript of what occurred, is that the government had weighed her substantial assistance and was recommending a departure so that the sentence would be 96 months. That the court, in view of those factors, agreed to depart to 96 months. But then she applied the other factors, the 3553A, not to, and weighed them, her age, for example, and decided to stay at 96 as opposed to raising the criteria. She could have decided, for example, that a substantial assistance departure to 96 months would be appropriate. And then she could say, but I'm declining to go that far down because substantial assistance may justify it, but there are other factors that I think can go into play.  They talk particularly that arriving in the final sentence, I'm quoting now from Richardson, a Second Circuit case, the court may consider other factors in determining whether to grant the full extent of the departure. And that, I believe, is what the court was doing. She decided substantial assistance would justify a 96-month sentence. But then, should she go above that? Well, you've got the prior conviction, which was a very serious offense, but then you've also got her age. And I think the court decided to stay at 96 months as opposed to going higher and not rewarding her the entire departure because of the 3553A factors. And that, if I understand it, is the way that the court is supposed to do it. Well, the other thing that caught my eye was that she was determined to go along with the recommendation of the government's attorney. Well, this judge... That seemed to be the most determinative factor more so than anything else. I don't... I think that she agreed with us in this sense. Well, it seemed pretty clear. Frankly, she... It wasn't even clear to me what discretion she exercised in assessing the quality of her assistance and what it resulted in and what it was worth. It looked like 96 was it. That's where we're going. We'll get there however we have to get there. Well, it's a problem with sentencing, Your Honor, in this sense, that the factors that would justify the degree of a substantial assistance departure are necessarily filed under seal. And they are not discussed in open court. The factors, of course, are set forth in the plea agreement, but... Well, there were comments in the record that indicated that her assistance was quite helpful to the government in prosecuting other people. There was one defendant that was still outstanding, if I remember correctly, at the time of the sentencing. Well, Mr. Won Yiel, Y-I-E-L-L-E, who was, I think, 82 at the time of sentencing, had absconded. And we were still looking for him. This is the case of the geriatric Koreans. And we finally caught up with him. I don't know what nursing home we found him in, but they finally caught up with him. But, Your Honor, I think that the district court is in a problem in a situation like this when you have to put on the record the consistency or the reasons that you're going down for a substantial assistance departure. But you cannot be too specific. You cannot say, for example... Oh, I understand. When she dined out in Joe Blow... I think the question is whether or not she used other factors other than assistance. And the record, I'm not sure, is entirely clear on that. The other thing that's somewhat bothersome is that both of you seem to be suggesting that whatever the guideline says must be applied and you can't go below the guideline or above the guideline. No, Your Honor. First, I think, as we've said, you have to determine what the minimum mandatory sentence is. I agree. Okay. Because, of course, if the mandatory minimum is higher than the guidelines, then that's your guideline sentence. So I agree. You have to stop at the mandatory minimum. Yes. Okay. At least we found one thing to agree on. Absolutely. In this case, it's, in a sense, irrelevant in terms of, like, argue what guidelines level should apply. The government said it should be 35, which is 188 to 235 months. The defense was asking for 31, which is 121 to 151 months. So the mandatory minimum was, at best, a month below the guidelines level that the defense was asking for. They thought it should be 34 minus 3, or 31, which at minimum is 121 months. I don't think anyone thought that this was a guideline sentence. If anything, it was going to be a sentence based on substantial assistance, and that was what, in fact, they were hoping to get, and they did get. But I don't think that the guidelines, per se, was certainly not treated as mandatory. Absolutely not. That's well understood. The question was how far to go and what other factors should apply and whether she should stay at 96, or whether, as in one of the cases, I can't remember which one it was, where the court actually departed up at 43% above the lowest guidelines level. It granted the substantial assistance departure for all the good that it did the defendant because it ended up applying other factors and ending up at a much higher sentence. In this case, I think the court went to 96 and decided whether to go higher and decided to stay at 96. I just have one last question. I have the statute here in front of me. Thank you. 84-1-b-a-1-a-little-8. It says, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. Such person shall be sentenced to a term of imprisonment, which may not be less than 10 years or more than life. It doesn't say anything about purity. No, Your Honor. You're right. In this case, so often we'll get a case where someone's bringing in 100 grams of ice at the airport or methamphetamine at the airport, and the purity makes a difference of which mandatory minimum applies. In this case, she pled guilty to 3,000 grams of a quantity that has any detectable amount of methamphetamine. So in this case, it would make no difference in terms of sentence because of the quantity is well over 500 grams. Okay. That's what I thought. So she well could have been confused about the term ice for purposes of the guidelines. Well, I think the Court has a good point that when we talk about purity, we should put in the plea agreement reference 2D1.1C, meaning 80% or more purity. But if you look at, for example, the plea colloquy, the Court advised her that she was charged with that she was pleading guilty to 3,000 grams of methamphetamine or detectable amount. And so to me, this is largely not to the point. I think the question about this case is whether what the defendant wants, and that is to go back below the 96 grams using 3553A factors. And I don't think that the Court is allowed to do that. Okay. Thank you, counsel. I'm sorry? Oh, I didn't hear you. She's way over. No. She's way over. Yeah, you're way over. Thank you. Oh, I'm sorry. I talked something. Tell me to sit down. Okay. Thank you, Your Honor. Your Honors, I think I have one minute to respond to 22 minutes of argument, so I'm going to be as quick as I can. Well, we'll give you three minutes. Thank you, sir. First of all, Evans-Martinez says that you must apply the 3553A factors to the pre-departure guidelines, which in this case is 188 to 235. That's another reason why the guidelines. You know, I don't know if it matters which you apply first. You do have two different tracks. But that's another reason why the guidelines count, because first you get the guidelines, then you determine the 3553A factors, and then if it's above the mandatory minimum, you then take the departure below that, and that's what breaks it. So the 3553A factors are not at all irrelevant. If you disagree with me on the ICE issue, which I hope you won't, but if you do, then you still can and must, under Evans-Martinez, consider the 3553A factors. But your whole goal is to get her sentenced below 96 months. Correct. The only way you can do that is through the substantial assistance. Substantial assistance. Correct? Yes, departure below whatever the guideline range becomes if it's above the mandatory minimum. If the departure is from the mandatory minimum, it's even lower. The sentence is even less because, in this case, the guidelines are higher than the mandatory minimum. As far as the plea agreement and the statute is concerned, I don't have the statute in front of me, but I can tell you that the plea agreement uses the word ICE three times as a synonym for methamphetamine hydrochloride, and twice it references methamphetamine hydrochloride alone. At no point that I can see does it refer to ICE as defined in the guidelines. Also, the mandatory minimum, again, I don't have it in front of me, but it's either 3,000 grams net weight or a certain amount of pure. And paragraph one of the plea agreement says that she agrees to plead guilty to 3,000 grams net weight of methamphetamine hydrochloride without reference to the purity. So I would disagree with that characterization. I don't think you need to get that mandatory minimum because it's an either or. It's either pure or a certain amount regardless of purity. And that's what she pled to was a certain amount regardless of purity. And the third thing I just wanted to say is that, you know, the judge is supposed to evaluate independently the departure. And here she, I think it is, clearly did not do that because departures are based on the guidelines. They have to correspond to a certain number of levels. And when the government said it's worth 10 levels, she said yes. When the government said a few pages of transcript later, it's worth seven levels, she said less. Clearly the value of the substantial assistance was not evaluated here, and it was very, very substantial. So, again, oh, and the last thing is that I disagree with the argument that you can never use 3553A factors when the amount is below the mandatory minimum. The three cases the court asked us to address say that where the mandatory minimum is the basis of the sentence. In other words, where you go down from that, then you can't use those factors. But here it was a guideline sentence because the government made its motion both under the guidelines and under 3553E. And that means that you can apply it to the guidelines even below that. Thank you, Your Honors. Case just argued will be submitted.
judges: Reinhardt, Thomas, Paez